```
                    UNITED STATES BANKRUPTCY COURT
                  FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                              )
                                    )      Chapter 7
CHRIS E. CULLEN and                 )
BETH A. CULLEN,                     )      Bankruptcy No. 05-01508
                                    )
     Debtors.                       )
```

### ORDER RE: MOTION FOR SANCTIONS AND
### MOTION TO ABANDON AND MOTION TO LIFT STAY

This matter came before the undersigned on July 21, 2005 pursuant to assignment. Debtors Chris and Beth Cullen were represented by attorney Stuart Hoover. Creditor Dupaco Community Credit Union was represented by attorneys Chad Leitch and Christopher Fry. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

### STATEMENT OF THE CASE

Dupaco seeks relief from the automatic stay to effect a setoff of its claim against two savings accounts held in joint tenancy by Gerald Cullen and his son, Debtor Chris Cullen. Debtors request sanctions against Dupaco based on its postpetition freeze of these accounts.

### FINDINGS OF FACT

Debtors filed their Chapter 7 petition on April 6, 2005. They owed Dupaco under three loans related to a Mazda vehicle, a Yamaha motorcycle and a credit card. Debtors' schedules list these loans with balances of $9,000, $8,713 and $7,357, respectively. These accounts are all cross-collateralized with the vehicles and Debtors' accounts at Dupaco. Schedule E also lists a student loan with Dupaco with a balance of $5,700. Debtors had two joint accounts with Dupaco which had minimal or negative balances at the petition date. Dupaco received notice of Debtors' bankruptcy on April 12, 2005.

In 2003, Debtor Chris Cullen's father, Gerald Cullen, changed his three accounts with Dupaco to be joint accounts with his son Chris. These accounts were a Share/Savings account ("savings"), a Share Draft/Checking ("checking") and a Share Certificate ("Christmas Club"). A copy of the Account Card is in evidence as Dupaco's Exhibit III A. Gerald Cullen and Chris Cullen testified that this change was made in order for Chris to have access to his father's accounts in case of emergency. They further testified that all funds in the accounts belonged solely to Gerald Cullen and that Chris Cullen never deposited or withdrew funds from these accounts. Debtor Chris Cullen stated he had forgotten that his name was added to the accounts when he filed his bankruptcy schedules. After the May 23, 2005 meeting of creditors during which the accounts were discussed, Debtors amended their statement of affairs to show these accounts as being held for another, i.e. Gerald Cullen.

Dupaco froze Gerald Cullen's savings and Christmas Club accounts on April 28, 2005. The balances in the accounts on Debtors' bankruptcy petition date were $302.97 and $660.47 respectively, or $963.44 total. Mr. Cullen became aware of the freeze on his accounts on May 6, 2005 when he attempted to make a withdrawal of $300 or $400 to take on a five-day fishing trip. When he was unable to make an ATM withdrawal, he went to a Dupaco drive-up teller and was told about his son's bankruptcy. Dupaco stated that funds in Gerald's account were frozen because Chris was a joint owner of the account and he owed Dupaco money. The teller was trying to call Chris Cullen and asked Gerald for Chris' cell phone number. Apparently, Dupaco was unable to get in contact with Chris Cullen at that time. Gerald Cullen testified that he was shocked as he had not known Chris had filed for bankruptcy.

Gloria Trierweiler, debt counseling and collections manager for Dupaco testified regarding procedures Dupaco follows when a customer files for bankruptcy. She stated that Dupaco follows a procedure check list to code the account for no contact with the debtor except through an attorney. The debtor's accounts are frozen if there is money there. Dupaco freezes the accounts as soon as they are aware of the bankruptcy and they remain frozen until the final bankruptcy order. Dupaco does not take any money out of the accounts while they are frozen. After the bankruptcy case is final, Dupaco takes the balance in the account to offset losses

unless the account owner has reaffirmed debt with Dupaco. Dupaco does not regularly file motions for relief from the automatic stay to enforce its setoff rights against frozen accounts. Instead, it merely waits until the bankruptcy case is closed to apply the amounts frozen in the accounts to outstanding loans. Ms. Trierweiler testified that Dupaco has been following these procedures for some time prior to when she started working there four years ago.

Dupaco and Debtor's attorney had discussions starting in mid-April 2005 regarding reaffirmation of debt. Debtors wished to reaffirm only the debt secured by the Mazda vehicle. Dupaco refused to agree to a reaffirmation unless Debtors reaffirmed all the outstanding debt. These discussions continued through mid-May 2005.

Counsel for Debtors sent Dupaco a letter May 17, 2005 asserting that freezing Gerald Cullen's accounts was a violation of the automatic stay. By that time Gerald Cullen had discovered his accounts were frozen and communications between Debtors and Dupaco regarding reaffirmation quickly ended. Dupaco filed its Motion to Lift Stay on June 7, 2005. Debtors filed their Motion for Sanctions for violation of the automatic stay on June 16, 2005.

Debtors received two notices from Dupaco dated July 13, 2005 regarding insurance on the Mazda vehicle and the Yamaha motorcycle. Debtor Chris Cullen testified that he'd received an earlier notice which he didn't keep. He stated that when he received the latest notices, Dupaco had already had possession of the collateral for more than a month.

### TEMPORARY ADMINISTRATIVE HOLD

It is settled that a creditor may temporarily withhold payment from a debtor's account to protect setoff rights. Citizens Bank v. Strumpf, 516 U.S. 16, 21 (1995). In Strumpf, a bank placed an administrative hold on so much of the debtor's account as it claimed was subject to setoff. Id. at 18. Five days later, the bank filed a motion for relief from the automatic stay. Id.

The Court noted that Section 362(a) stays an exercise of a right of setoff. Id.; 11 U.S.C. § 362(a)(7). It found that the bank's hold on the debtor's account was not an improper setoff because the bank did not intend to permanently settle

3

accounts. Id. at 19. Rather, the hold was temporary pending its request for relief from the automatic stay and therefore permitted. Id.

The court in In re Schafer, 315 B.R. 765, 774 (Bankr. D. Colo. 2004), applied the holding in Strumpf and determined that the combined effect of withholding funds, including postpetition earnings, for over six weeks, coupled with repeated requests for reaffirmation, without bringing the matter before the court at the earliest possible opportunity violated the automatic stay. In In re Orr, 234 B.R. 249, 255 (Bankr. N.D.N.Y. 1999), the court found a two month long administrative freeze was more than a temporary refusal to pay a debt and, therefore, violated the automatic stay. In Hempstead Employees Federal Credit Union v. Wicks, 215 B.R. 316, 319 (E.D.N.Y. 1997), the court approved the conclusion that a an administrative hold lasting four months during which the creditor never sought relief from the stay constituted forbidden self-help in violation of the automatic stay. "Indeed, the hold might have continued indefinitely if [the debtor] had not finally taken action . . . to bring the matter to a head." Id.

**SETOFF**

Although no federal right of setoff is created by the Bankruptcy Code, § 553(a) provides that whatever right of setoff otherwise exists is preserved in bankruptcy. Strumpf, 516 U.S. at 18. "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" Id. (citations omitted). Section 553 preserves a right to offset created by nonbankruptcy law where the debts sought to be offset are mutual and both debts arose prepetition. In re Firestone, 179 B.R. 148 (Bankr. D. Neb. 1995). By establishing a right to setoff, a creditor makes a prima facie showing of cause for relief from the automatic stay. In re Whitaker, 173 B.R. 359, 361 (Bankr. S.D. Ohio 1994).

In order for Dupaco to establish its right of setoff, it must demonstrate:

> 1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.

4

2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case.

3. The debt and the claim are mutual obligations.

United States v. Gerth, 991 F.2d 1428, 1431 (8th Cir. 1993).

To be mutual, the court must find that: (1) the debts are in the same right; (2) the debts are between the same parties; and (3) the parties stand in the same capacity. In re Donnay, 184 B.R. 767, 787 (Bankr. D. Minn. 1995). "The mutuality requirement is strictly construed. . . . The right to setoff under § 553 is permissive, not mandatory." Id. There can be no right to setoff where a creditor seeks to setoff its claim against one party in satisfaction of a debt owed to a third party. In re Fairfield Plantation, Inc., 147 B.R. 946, 952 (Bankr. E.D. Ark. 1992). As a general rule, a joint debt cannot be set off against a separate debt, or conversely, a separate debt against a joint debt. In re Bacigalupi, Inc., 60 B.R. 442, 446 (B.A.P. 9th Cir. 1986).

Iowa common law provides that joint tenants in an account each have a right to all the funds in that account. Anderson v. Iowa Dep't of Human Servs., 368 N.W.2d 104, 109 (Iowa 1985). However, "[n]otwithstanding the undivided nature of the tenants' proportional interests, each tenant's precise share of the undivided interest may be determined." In re Estate of Thomann, 649 N.W.2d 1, 6 (Iowa 2002). The presumption that joint tenants hold the property in equal shares is rebuttable by clear and convincing evidence. Id.; In re Kondora, 194 B.R. 202, 209 (Bankr. N.D. Iowa 1996).

The Iowa Supreme Court has stated that one joint owner cannot, by virtue of that relation alone, sell or mortgage or pledge the interest of the other joint owner. Frans v. Young, 24 Iowa 375, 1868 WL 158, at *2 (Iowa 1868); see also Kondora, 194 B.R. at 209 (noting garnishment is only effective to the extent of the debtor's interest and cannot displace prior equities or rights).

## SANCTIONS FOR STAY VIOLATION

Section 362(h) addresses sanctions for the violation of the automatic stay. It provides that:

> An individual injured by any willful violation of a
> stay provided by this section shall recover actual
> damages, including costs and attorneys' fees, and,
> in appropriate circumstances, may recover punitive
> damages.

11 U.S.C. § 362(h).  A violation of the stay is "willful" where the violator's conduct is deliberate and with knowledge of the bankruptcy filing.  In re Hromidko, 302 B.R. 629, 632 (Bankr. N.D. Iowa 2003).  In imposing actual damages, the trial court has discretion to fashion the punishment to fit the circumstances.  Hubbard v. Fleet Mortgage Co., 810 F.2d 778, 782 (8th Cir.1987).  Egregious, intentional misconduct by a creditor violating the automatic stay will support a punitive damages award.  In re Ketelsen, 880 F.2d 990, 992 (8th Cir.1989).  The creditor's status as a sophisticated player in the credit industry can be relevant when considering whether to award punitive damages under § 362(h).  Hromidko, 302 B.R. at 632.

### CONCLUSIONS

Based on the foregoing, the Court concludes that Dupaco violated the automatic stay by placing a hold on the accounts held by Gerald Cullen and Debtor Chris Cullen as joint owners.  This was not a temporary hold of the type permitted in Strumpf.  Rather, Dupaco intended that the freeze continue indefinitely until the bankruptcy case was closed at which time it would take control of the money in the accounts.  Dupaco did not seek relief from the stay to assert its setoff rights for 40 days and only after Debtors complained that the hold was a violation of the automatic stay.  Furthermore, it attempted to use the administrative hold as leverage to pressure Debtors to reaffirm all debt with Dupaco.  This type of self-help remedy violates the automatic stay.

The Court further concludes that Dupaco has no right to setoff Debtors' debts from the accounts held jointly by Gerald Cullen and Debtor Chris Cullen.  The record is clear that none of the funds in the accounts is property of Debtors.  The funds are the sole property of Gerald Cullen.  Therefore, the mutuality requirement of § 553(a) is not present. Dupaco may not setoff its claim against Gerald Cullen in satisfaction of debt owed by Debtors.

Dupaco asserts the paperwork signed by Debtors for their loans and the Account Card signed by Gerald Cullen and Chris Cullen allow Gerald Cullen's accounts to cross-collateralize Debtors' loans.  The Court notes, however, that the Account Card for Gerald Cullen's accounts (Exhibit III A) does not elect to establish a credit plan.  Dupaco's Trial brief notes that language purporting to pledge the accounts as collateral security for any of the joint owners' loans is included in Exhibit III A.  This is set out on the third page of the Exhibit which is a copy of an unsigned "Joint Share Account Agreement."  The Court concludes that Dupaco has failed to produce sufficient evidence that Gerald Cullen agreed that his ownership interest in the joint accounts would be liable for Chris Cullen's debts.  Dupaco has no right of setoff against Gerald Cullen's accounts and is not entitled to relief from the automatic stay.

Sanctions are appropriate in this case.  Dupaco is a sophisticated player in the credit industry.  It had knowledge of the bankruptcy filing and deliberately placed an indefinite hold on Gerald Cullen's accounts because Debtor Chris Cullen was jointly named on the accounts.  Dupaco intended to apply funds in these accounts against Debtors' loans without seeking leave of the Bankruptcy Court.  This constitutes a willful violation of the automatic stay.

Although not fully developed at the hearing, the Court is aware that the consequences of Dupaco's actions were such that an award of actual damages is appropriate.  The relationship between Gerald Cullen and Debtors became strained because of the effect Debtors' bankruptcy case had on the joint account.  Debtors were rightfully surprised and emotionally upset by Dupaco's administrative hold on Gerald Cullen's accounts.  They further incurred the expense of enlisting help from their attorney and attending the hearing.

An award of punitive damages is also appropriate in this case.  Dupaco's actions in this case are apparently a pervasive practice.  It is Dupaco's mode of operation to freeze all accounts of customers who file for bankruptcy protection.  Dupaco's brief notes that it has now reviewed and modified its procedures to avoid future violations of the Bankruptcy Code.  Such ameliorative actions, though laudatory, are belated and of no comfort to Debtors.  Even so, the Court has considered this corrective action in making its award.

**WHEREFORE**, Dupaco Community Credit Union's Motion to Abandon and Motion to Lift Stay is DENIED.

**FURTHER**, Dupaco is ordered to lift the hold on Gerald Cullen's accounts immediately and permanently.

**FURTHER**, Debtors' Motion for Sanctions for Violation of § 362(a) Automatic Stay is GRANTED.

**FURTHER**, the Court imposes sanctions of $1,000 of actual damages and $5,000 of punitive damages.

**FURTHER**, judgment shall enter against Dupaco Community Credit Union and for Debtors Chris and Beth Cullen in the total amount of $6,000.

DATED AND ENTERED: August 16, 2005

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE